Good morning, counsel. Good morning. It's still morning. It is, yes. Good morning, Your Honors. May it please the Court. My name is Keith Hilsendegger. I'm with the Federal Defender's Office in Phoenix, Arizona. And I represent the juvenile, in this case, JDT. I'm going to watch the clock and try and save about three minutes for rebuttal, if I may. The revocation proceedings in this case suffer from three serious flaws. The conditions that my client was accused of violating were impossible to comply with. The main witness against my client at the revocation hearing had serious credibility and bias issues. And the judge failed to articulate required reasons to support his decision to revoke my client's probation. These flaws should lead this Court to vacate the revocation order and remain with instructions to dismiss allegations A and B from the second superseding petition. And if I may, I would like to start with the third of the reasons that I articulated. The fact that the judge did not articulate the reasons that he was required to under the due process cases that the Supreme Court decided, Morrissey and Gagnon, I think it is. And this Court's in-bank decision in Sesma Hernandez. Conclusory statements that a probationer has violated his probation do not satisfy the due process requirement that a judge articulate the evidence that was presented that support the violation. And that's exactly what happened here. After the evidence closed and the lawyers of the parties presented their respective statements, the judge, three lines of the transcript comprises his entire findings. I found the government has proven its allegations here. When should we set the disposition hearing for? That is not allowed. And why isn't, why wouldn't we require your client's lawyer in that situation to object on that basis and point out to the Court, Your Honor, you know, obviously I disagree with what you've said, but you are required by the due process clause or whatever to, I think what you're getting at is that there was a particular factual dispute that you think was very material to the outcome of the case. And why wouldn't someone have to alert the judge that we need a finding, an explicit finding, which way you came down on this factual dispute? Well, I have two answers that address that point, Your Honor. The first is the judge is presumed to know that he's required to resolve this dispute on the record, especially in light of the ruling that he made in my client's favor about admitting his version of the events at, through the polygraph report. Yeah, but right. I guess I read the report differently, frankly. I think it dooms your client's position on whether all of this was consensual or not. I think it actually affirmatively indicates that part of it was consensual, and that's the valid basis, it seems to me, that the Court had for revoking here. Now, I grant you the Court didn't make an explicit finding to that effect, but it seems to me that's what the record indicates. And I mean, I guess I'm not sure why we should basically, as you say, send it back and have this be done over again when it could have been cured if your client's, I can't remember, were you the lawyer? I did not handle the hearing, Your Honor. But whoever was there just said, Your Honor, wait a minute. You know, you've made your finding, and I agree with you. It's a very, it's like a one-sentence. Yeah. We need something more so you can alert the appellate court as to which way you came down on this, but nobody did that. My other response to that, Your Honor, is a little bit more technical, and it's simply that the rules didn't require counsel to make an objection once the judge had articulated his finding. There's no requirement in the rules that we take exception to the court's ruling rather than we simply alert the judge to the, you know, the fact that there was a dispute. Was the incident consensual? Was it not? And as against the due process requirement that he articulated a finding that's sufficient to allow this Court to review it, he should have known that he was required to make that finding. So this is sort of a gotcha one. The lawyer knows that he's making a mistake, and so he says, fine, I won't object. I'll take it up on appeal. I sort of had the same feeling that my colleague does, that that's why we have waivers when the lawyer fails to object. Well, Your Honor, I will concede that the record could have been much clearer if we had said, Your Honor, we need to have you resolve this credibility dispute. But we made it sufficiently clear to the district court that whether the incident was consensual was the crux of whether there should be a finding of a violation at all. And as against the backdrop of the evidence that was presented at the hearing, I think the record is sufficiently clearer, although it could have been clearer, for the judge to know that he is required to set forth some basis other than I think the defendant loses here. I think you say I think, but you've never sat in the chair, I suspect. And it isn't that easy to remember everything on every case for busy district judges. So I think the supposition is wrong, and I would rather state on the law of why isn't it waived when counsel, who knows the case and only has one case to worry about, if counsel doesn't object, why isn't the objection waived? Well, Your Honor, I've articulated a reason why I think that the rules don't require an objection here. But presupposing that you don't agree with that, I think that that doesn't prevent this Court from reviewing the objection at least for plain error. Okay. That's fair. Except that I also don't believe that the government has argued plain error sufficiently in its brief to put that issue on the table here. I see. Waiver of a waiver. Correct. Okay. Putting aside the question about whether the issue was — the incident was consensual or not, I also believe that there was a problem in that the conditions that my client was accused of violating were impossible to comply with, because as the government still does not contest, he truthfully told the polygraph examiner that he was the victim of sexual abuse. I just — that's where I differ with you. Part of it may be, but not the whole thing. And I agree with you that the reporting requirement that the government relies on, I don't think that was made clear enough as part of the rules. But the rules were very clear that you are to engage in no sexual conduct whatsoever while you were here. And I read even the polygraph report, as I said, as dooming your client on even that front, because he — at least what I read here, but tell me if I'm — you think I'm missing something. The first contact, the contact from — I'm not going to mention the names, but the other boy toward him sounded to me like it was — there was nothing to indicate that that was not consensual. What he said was not consensual was when he was then forced to do something to the other boy. I guess, Your Honor, I disagree with that reading of the polygraph report. And the way I read the polygraph report is telling a story of, you know, this contact went on throughout the day as they were traveling toward this field trip that was, you know, all the way across the country. And the way I read the disclosure as it was recounted in the polygraph report was that my client tried to push this other boy away. And once he got the impression, because the other boy was very persistent, that that was not going to be successful, he just sort of relented to this assault taking place. And — It became a mutual assault, I guess. I don't know. What about the statement the school makes that there's no such thing as non-consensual sex, that everything that is sex is sex? Isn't he warned at that time that no matter what the situation is, it's a violation and you're going out the door? But that's what's so bizarre to me about what the rules were at this treatment facility. Well, remember what they are. What they're dealing with is trying to help young people that are overcoming by an addiction. It's just like alcoholism and the rest of them. They have very tough requirements, but it's not because they're a military institution. It's because they believe that's what the young people need. But if they have a right to make that right, that rule, doesn't that do away with your argument that there's no such thing as a non-consensual sexual contact? I don't think it completely disposes of my argument, Your Honor, because the program director also testified that he expelled my client for engaging in consensual sex. It's no such thing as consensual, right? Is it no such thing as consensual? Right. So he – my client was expelled, apparently, for doing something that by definition could not exist in the universe of the treatment facility. And if that is not a – Well, but there was also a rule that says no sex, period. Well, then the rule also forbade him from being a victim of sexual contact? That seems equally bizarre to me. It's bizarre, but that's the rule, though. And it had to be reported. So even if he were a victim, he violated the rule by not reporting it. But how is he supposed to – how is he supposed to know what he's supposed to report in this bizarre universe of a world where he can be thrown out for engaging in conduct that by definition cannot exist? He shouldn't be expected to comply with a rule that is so vague and impossible to understand. I have trouble understanding what the rule is based on my reading of the program director's testimony and the handbook that was admitted as an exhibit at the trial. I still don't understand what exactly he's not allowed to do. And if it's true, Your Honor, that the rules forbid him – to have sex while he was there? I think it's clear that he was not allowed to engage in any sexual activity at all. But it was not so clear whether he was allowed to be the victim of sexual assault. And given everything that we know as a society, everything that this program director certainly should know as someone who treats sexual assault perpetrators, many of whom are sexual assault victims, given that we know – everything that we know about the way in which people, children, teenagers, women of adult age who have worked for this Court, as a matter of fact, how they disclose being the victim of sexual assault, it seems like putting the onus on a person who is at a prison seems like a condition that at least should have required very clear, explicit notice with some direct testimony about how that ruling – rule was made communicated to my client and how he acknowledged understanding it. And if I would, I'd like to save the balance of my time. Thank you, counsel. Good morning. May it please the Court. Anne Demarais for the government, and I'm out of Arizona. In this case, the district court did not err, either plainly err in the procedural aspects, nor did it abuse its discretion when both finding that the juvenile did violate his probation conditions and – Which condition are you mainly relying on? Well, all three. I mean, obviously, the first two are related, that he participate in the residential treatment program, AMI. And to go to your discussion earlier with defense counsel, the government has to prove that he did not comply with his condition, that he go to this program, that he complete this program. And I know we've gone down this road where it was consensual or not consensual, but it happens oftentimes when any defendant doesn't comply with their halfway house and they get kicked out. We don't have a full-blown trial. It's like, should he got kicked out? Was this reasonable? Was this fair? The government proves he didn't comply with that condition. He got kicked out. Yeah, but, I mean, I hope you're going to not say that you're relying on this, but if he were raped at gunpoint and that was the basis for his expulsion from the program, he was just completely victimized, no fault whatsoever on his part. In fact, he tried to do everything he could to avoid becoming the victim of a rape, but nonetheless, that happened to him. I assume you're not saying that he could be violated and sent to prison on the basis of that? Well, there's a couple things. The Director did testify in the record that, yes, somebody who didn't want it to happen could be expelled. No, no. I'm not talking about whether he could be expelled from the program. If they want to make some irrational decision like that, that's up to them. I'm talking about, okay, but then once you get into court, you have to have to have that scenario. Right, and I think that goes to, and we don't have that case here. He could have complied, yes. Okay, but so you're saying that if that were the case. If that were the case. Hang on, hang on. Can I just finish my question? All I want to get from you is a straight answer. If that were the situation, then you would agree that the judge could not revoke his probation and send him to prison on that basis, correct? I would say that would be fundamentally unfair. Okay, thank you. So then that's their position on what the facts showed, not quite as extreme, but that's their position, that this was totally unconsensual. This other boy coerced him into engaging in all of the sexual activity, and you would concede that if that version of the facts were accepted by the judge, he could he did not have the authority to revoke probation. I'm not saying that's the correct version. I read the facts differently. But why aren't they right in saying that the judge was required to tell us which version of the facts he credited? Because under one version, revocation was not permitted. Okay. I'm going to take a step back from that. You had a situation where somebody was raped at gunpoint. And in this case, even if they're facts, even if they say, hey, he was an unwilling participant, there's a sliding scale on this. And I think when they did the investigation, they looked, they talked to the other people, to the point where this defendant ejaculated. There was no struggle. There was no fight. And so they looked at those facts in determining this was a consensual act. And do I think that the judge had to make a finding that, well, he really didn't want it to happen, or, you know, this other guy was maybe the first one to act? I don't think that is important, Your Honor. And I think that in this case, even though we have facts that lead it to this was a consensual act, and clearly I disagree with defense's opinion that he was a victim in this case, it was a mutual act. As I said when your opponent was up here, that's how I read the record. Yeah. That it was not all nonconsensual. But what about Sesma? Is it Sesma Hernandez? I mean, that case, I read that case as saying that in this context, if there is a material fact that's in dispute, that the defendant puts in dispute, the judge must, as a matter of due process, resolve that explicitly on the record so that we know which side of the factual dispute the judge came down on. And that did not happen here. So what — I don't — it seems like we're stuck. Don't we have to send it back and have the judge tell us which version of the facts that he credited? Our position is, in this case, based on the facts that have been presented, that no, because the facts that were presented, either he was — were that it was a consensual thing, even though later he says, I really didn't want to do it, and that was a version of what had happened. I think either way. Is it your position, counsel, that if the district court judge had credited the defendant's version of the facts, he would not have revoked? I believe, even under the defendant's version of the facts, being he was not raped at gunpoint, he did not report the activity right away, based on the program's ruling that, hey — and it makes sense. If you're a victim of sexual assault or you have any contact, you need to report this, because this is younger kids, these are all sex offenders. It's super important to report this right away. So it would have been a violation of the failure to report? If his version of the facts were true, it would be the failure to report that supported the revocation? Again, the revocation was that he was kicked out of the program, and they made that determination to kick him out of the program. But the district court had to make the determination as to whether or not the evidence supported the revocation for that, right? Because the charge was he did not successfully complete the program. Correct. So the district court had to determine, did he unsuccessfully — was he unsuccessfully terminated from the program? And the answer is yes. So, but for what reason? Was it for failure to report or for engaging in sex, consensual or not? It was because the program unsuccessfully discharged him for having sexual contact and not reporting it, based on their investigation. So my question is, based on what Judge Wofford had asked you, is if the district court — because the district court didn't say whether or not he viewed the defendant as a victim or a willing participant. And so my question to you was, if, in your view, if the district court had determined that he was a victim, the district court would have still said that was sufficient to support a decision that he unsuccessfully completed the program? Again, when you use the word, like, victim, I think if the district —  Yes. Okay. That was more — yes. If he was coerced, I think, again, the district court could have found that he violated his conditions by engaging in this, not speaking up. Even if he was coerced, that would be — Even if he was coerced to the extent that there's — that it could have been. He didn't resist hard enough? I mean, that's just — you can't possibly go down that road, right? I know that. If he was coerced, it wasn't something that he voluntarily did that should subject him to being sent to prison. Someone forced him to do something. I don't see how you can take the position that that's a valid basis. Yeah. Well, we get to send you to prison for that. That makes no sense. No. And again, our position is, of course, he was not forced. This was consensual act. But we don't mean that. And then — but if he was — and I answer — you know, if he was held with a gun to his head and the facility still decided to kick him out because he didn't report, of course, then that would be an issue of fundamental unfairness. But unless the degree of coercion is okay. Pardon? May I ask you a question? Yes. Where does reporting come in? Is the rule of the school that you must not only engage in — must not engage in sexual conduct, but if you do, you must also report? Yes. Immediately. And did he report it? He reported it just prior — so the incident happened in June. He disclosed this just prior to the actual polygraph starting in August. After he had left the school — after the school had already terminated him or before? No. Before he was removed. And that's — his statement prior to the polygraph led them to the investigation. So when he had to go to the polygraph, he then disclosed — he made the report? Correct. Now, how long was it from the time that this event took place till the time he disclosed the report — or made the report? From June to August, correct? Yes. About two months. From mid-June to mid-August. Does the report say you can make it any time or promptly, or what is the rule of the school? That you are to report it immediately. Immediately. And it was reported two months later? Correct. Would that be, in your estimation, sufficient basis for the school, under their rule, to revoke him? Again, my position on whether the school should have revoked or not, I don't think really matters. It's a record we flex. I wish they would have kept him there. Well, it seems to me that you're putting yourself in the shoes of the district court. The district court had hoped sending him to this school was going to turn him around, and he would obey those rules. Right. So, I'm just wondering, in the judge to whom we give very wide discretion in these issues of dealing with probation, because it's not an easy situation to be in, and for these kinds of cases especially, the judge does not have psychiatric training. How did the judge handle it? Did he determine, did he rule upon the actual sexual encounter? Did he rule on the report? Or did he just base it upon he's no longer at that school, and then we have to send him someplace else? The latter, Your Honor. The latter. And I do believe it is a record we flex. He just said the government found that you have Was there any motion made by the defendant at that time to have a factual determination made by the district court on the reasons why the school terminated him? No, Your Honor. And that's why we argue that it's a plain error standard. And again, you know, a lot of this goes down to prosecutorial discretion, what the acts were, and I think the record does reflect. And he said, you know, there's nowhere else for you to go. And this started in 2011, early 11, when the superseding information was filed. And it was a shame that they did not keep him there. But they can't have sexual contact there at the school. And then when you look at the goals of the Juvenile Delinquency Act, in that we look at rehabilitation, and the judge said this, we're not sending you to prison as a punishment. This kid has needed help, and unfortunately the ball was dropped four years or so when he was in West Virginia under probation. But we need to rehabilitate this kid. And the only place for him at this point was a juvenile facility. And this is after seven years of trying. So had he, you know, he needed to go somewhere to be rehabilitated. And that's why I think that the prison sentence in this case, a juvenile facility, was a reasonable sentence because they have people that can help him. And we know he can succeed and do really well in a controlled environment. You know, at home he was missing school, and he had law enforcement contacts, and he had this learning disability. All of a sudden he's at AMI. He's getting A's and B's. He now has his GED. They did not have behavioral problems with him. And so we know he can be rehabilitated. We know he can succeed in a controlled environment. Did poorly at home with mom, but he can, you know, he can succeed. And it is our position that this was a consensual act based on the facts surrounding the incident. There were people in the van. It was done very discreetly, mutual masturbation to the point where this defendant did state that he ejaculated. And so all those facts suggest that it was a consensual encounter. And for these reasons, I believe that a remand is not appropriate in this case. And if the Court decides otherwise, I don't think he's entitled to a new judge on this case. And, in fact, this was a joint motion on the parties that the district court judge handle the actual revocation hearing. It was not given to a magistrate. We did a joint motion so the Court would hear it, which the Court did. And then at sentencing, defense counsel, one of her arguments was, we don't want him to go to prison, Judge. You know so much about this case. You will have no control over this. And my time is up. Thank you.  Thank you, Counsel Roboto. Thank you. There's not a sliding scale for sexual assault. There's not a reporting requirement that should depend on, well, if he wasn't really coerced, then we're going to excuse that. But if he was only coerced a little bit, then he still needs to report that. The reporting requirement here was not very clearly explained, if at all, to my client. And all the documentation that we have about what was explained and how makes no mention of the reporting requirement other than to report it immediately. But there's no way we can get him back in the school, no matter what we rule here or what the district reported below, correctly? Is that correct? I'm not so sure about that. The program director ---- You mean he can enter an order telling them that they must take him back even though they found under their rules that he couldn't stay? Well, I have two responses to that, Your Honor. The first is that the program ---- Just give me your best one. The program director testified that he could come back if sufficient progress had been made. So ---- He could come back when? If sufficient progress had been made. If sufficient progress had been made. Right. So there's no ---- But there's no way that you could see that the judge could order them to take him back. No. He doesn't have any jurisdiction over it. Well, he has jurisdiction to refashion an appropriate remedy in light of whatever this Court says. Excuse me. That isn't my question. My question is he has no power to make the school take him back. No. He doesn't have any power to directly order the school to take him back. Okay. Thank you. And this was the last resort. This school was the last resort for this young man. As far as I know, this school was the last resort that was available within the range of contractors that were available to the probation department. The probation department could make greater efforts to find additional contractors that would be suitable under the circumstances here. We don't know that. But that would be an issue for the district court to explore on remand. I seem to remember that there was some mention at the hearing, maybe it was the disposition here, I don't remember which one, that the probation officer actually had made extensive efforts to find another similar placement and said that all of those efforts proved futile, right? The efforts proved futile because, as I recall from the record, Your Honor, because my client had earned his GED, whatever options were available. But that doesn't mean that other, you know, he's older now. There might be some other thing that probation could find that would be suitable. I'm just saying at the time, maybe it was at the time of sentencing, there were no other options, right? That was the problem. That was the record that was made, yes. All right. Thank you, counsel. All right. Thank you, Your Honors. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for the day. We are on recess until 9 a.m. 9.30 a.m. tomorrow morning. All rise.
judges: Wallace, Rawlinson, Watford